**Billy CHAMNESS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 581S138.**

Supreme Court of Indiana.

Feb. 22, 1982.

Hugh G. Baker, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Billy Chamness, was convicted by a jury of arson, a class B felony. Ind. Code § 35–43–1–1(a) (Burns 1979 Repl.). He was sentenced to a term of twenty years in the Indiana Department of Correction. In his direct appeal, he presents the following issues for our review:

1. Whether defendant knowingly, voluntarily and intelligently waived his right to counsel prior to testifying before the grand jury; and

2. Whether defendant was coerced into testifying before the grand jury by the state's threats of extended imprisonment.

On July 22, 1979, fire destroyed the home of Cheryl and Kenneth Workman at 606 South Norfolk in Indianapolis, Indiana. Investigation by the Arson Division of the Wayne Township Fire Department indicated the fire was incendiary in origin; gasoline had been spread just inside the front door of the dwelling, where the fire originated.

Ultimately, a grand jury was convened to investigate the fire. Defendant testified before the grand jury, where he confessed to the crime. Defendant was subsequently indicted for arson.

Prior to trial, he filed a motion to suppress his grand jury testimony on the basis that it had not been knowingly, intelligently, and voluntarily given, but rather was induced by the state's threats. A hearing was held and the motion was denied. Defendant's testimony before the grand jury was admitted at trial, which culminated in defendant's conviction for arson.

### I.

Defendant asserts his motion to suppress should have been granted because his grand jury testimony was not knowingly, intelligently, and voluntarily given. To support his position, he asserts the evidence reveals his waiver of rights and grand jury testimony were given without an attorney present. In addition, he points to the cumulative effect of various circumstances: the fact he was only eighteen years old, his lack of formal education beyond the eighth-grade level, his poor reading ability, and his low intelligence quotient (I.Q.) of 75.

As defendant concedes, his grand jury testimony was admissible at trial if it was knowingly, intelligently, and voluntarily given. *Laymon v. State*, (1961) 242 Ind. 62, 176 N.E.2d 120. As this Court stated in *Laymon*:

" 'The rule is well established that confessions and declarations voluntarily made by a witness before a grand jury may be introduced in evidence in a subsequent criminal prosecution in which the witness is the defendant.' 2 Wharton's Criminal Evidence, § 344, p. 23 (12 ed. 1955); See also: *State v. Brumfiel* (1919), 188 Ind. 584, 125 N.E. 40." *Id.*, 242 Ind. at 67, 176 N.E.2d at 122.

Consequently, the admissibility of defendant's incriminating grand jury testimony was dependent upon those same standards which govern the admission of any pretrial confession or out-of-court admission.

That well-settled standard was enunciated by this Court in *Ortiz v. State*, (1976) 265 Ind. 549, 553, 356 N.E.2d 1188, 1191:

"A statement made under circumstances requiring the giving of *Miranda* warnings is not admissible unless such warnings are given and a knowing and intelligent waiver of the rights involved is made. *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Pirtle v. State*, (1975) 263 Ind. 16, 323 N.E.2d 634."

The state bears the burden of proving an intelligent and knowing waiver of rights has occurred. *Fleener v. State*, (1980) Ind., 412 N.E.2d 778; *Shepler v. State*, (1980) Ind., 412 N.E.2d 62. In our review of a trial court's ruling on the admissibility of an out-of-court admission or statement, the issue remains a question of fact. We do not weigh the evidence nor judge the credibility of witnesses. Where the evidence conflicts, we consider only that which tends to support the trial court's ruling; if there is substantial evidence of probative value to support it, the ruling will not be disturbed. *Fleener v. State, supra; Wollam v. State*, (1978) 269 Ind. 286, 380 N.E.2d 82.

At the hearing held on defendant's motion to suppress, defendant's testimony before the grand jury was admitted. The record of that testimony reveals that prior to defendant's appearance before the grand jury, he met with the prosecutor, a police officer, and his mother. Thereafter, he signed a waiver of his *Miranda* rights. At the outset of his grand jury testimony, the advisement of rights contained on the form was again read to defendant. The following colloquy then occurred between the prosecutor and defendant:

Q. "And you understand that those are your rights and you are willing to waive those rights, is that correct?"

A. "Yes, sir."

Q. "The next item is a waiver and it says 'I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights and am willing to make a statement and answer question.' It is also dated 2/14/80, bears a time of 3:23 P.M. and is also signed by you. Is that correct?"

A. "Yes, sir."

Q. "Prior to signing this form, did you have an opportunity to consult with your mother about what you were going to do?"

A. "Yes, sir."

Q. "And you also consulted with an attorney about coming here today, is that not correct?"

A. "Yes, sir."

Q. "Can you tell me the attorney's name?"

A. "I don't know, sir."

Q. "Was an attorney appointed for you out in Juvenile Court?"

A. "Yes, sir."

Q. "Now, you and I also talked about your testimony here today, did we not?"

A. "Yes, sir."

Q. "And you understand that you are presently charged with, I think, a burglary in Juvenile Court and you are also charged with Arson as a B felony, is that your understanding?"

A. "Yes, sir."

Q. "I have also advised you that I make you no promises as to any of those cases, is that correct?"

A. "Yes, sir."

Q. "And I have not promised you that you will get any lesser time or no time, or any other promise at all, is that correct?"

A. "Yes, sir."

Q. "And understanding all that you still wish to testify before the Grand Jury?"

Defendant refuted aspects of his grand jury testimony when he took the stand at the suppression hearing. He denied he had consulted with an attorney prior to testifying and he stated he had signed the waiver out of duress—the fear of serving an extended term of imprisonment. He did not, however, controvert his grand jury testimony that he understood his *Miranda* rights.

■ Meanwhile, the record reveals that a personal factor defendant relies upon to buttress his claim—his poor reading ability—was not placed in evidence until defendant testified in his own behalf at trial. In other words, that evidence was not before the court until the motion to suppress was overruled and the grand jury testimony had been admitted at trial. Likewise, his intelligence quotient was not revealed to the court until the presentence report was submitted. In resolving defendant's claim, it is axiomatic we cannot consider factors and evidence not submitted to the court for its timely consideration.

■ What remains is defendant's signed waiver of his *Miranda* rights, his statement before the grand jury that he understood those rights, wished to waive them, and desired to make a statement which he realized could be used against him. The evidence reveals he was eighteen years old and had only an eighth-grade education, but had the opportunity to consult with his mother and an attorney prior to his waiver and appearance. To the extent the evidence establishing his consultation with counsel was conflicting, we cannot judge the credibility of witnesses. *Fleener v. State, supra.*

In the face of these factual circumstances, we cannot say the trial court erred when it concluded the defendant knowingly and intelligently waived his *Miranda* rights and testified before the grand jury. *Compare, Fleener v. State, supra; Sparks v. State,* (1967) 248 Ind. 429, 229 N.E.2d 642. The trial court did not err.[1]

## II.

■ Defendant concomitantly argues the evidence reveals his waiver and testimony were involuntary, and that his statements before the grand jury should have been suppressed for that reason. At the suppression hearing, defendant maintained he had signed the waiver form and testified before the grand jury because Detective Ron Beasley had told him he "would get twenty years" if he refused.

Again, this testimony directly contradicts his grand jury testimony that he was waiving his rights and testifying of his own free will, without inducements or promises from the state. Faced with conflicting evidence, this Court will not disturb the trial court's

---

1. Defendant's reliance on *Blatz v. State,* (1977) Ind.App., 369 N.E.2d 1086, is misplaced. There, defendant requested an opportunity to speak with an attorney during questioning which had been preceded by an advisement of rights. No such request was made here.

478

conclusion that defendant acted voluntarily, for the question was ultimately one of credibility for the trier of fact to resolve. *Fleener v. State, supra; Ortiz v. State, supra.* Nor would Beasley's alleged statement necessarily constitute an inducement of the sort which would render defendant's actions involuntary. *Turner v. State,* (1980) Ind., 407 N.E.2d 235; *Ortiz v. State, supra.* The trial court did not err in finding that defendant voluntarily waived his *Miranda* rights and testified before the grand jury.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court is affirmed.

Judgment affirmed.

DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

GIVAN, C.J., concurs in result.